MELODY J. STEWART, J., DISSENTING:
 

 {¶ 19} I agree that standing alone, the plain language of the clause stating that the purchase price of the property would be decreased by "[r]ents received by Seller from the tenant of the Premises, prorated to date of closing" seems to apply to all rents received from the tenant, not just the rent paid during the closing period. Nevertheless, we should not give words used in a contract their ordinary meaning if "manifest absurdity results."
 
 Cincinnati Ins. Co. v. Anders
 
 ,
 
 99 Ohio St.3d 156
 
 ,
 
 2003-Ohio-3048
 
 ,
 
 789 N.E.2d 1094
 
 , ¶ 34. When such a situation exists, the court should engage in fact-finding to give the contract the most sensible and reasonable interpretation.
 
 Kelly v. Med. Life Ins. Co.
 
 ,
 
 31 Ohio St.3d 130
 
 , 132,
 
 509 N.E.2d 411
 
 (1987).
 

 {¶ 20} An unreasonable and unintended result occurs if we read this contract clause in isolation from two other contract provisions: the reduction in principal credit and closing. The real estate purchase agreement states that Lombardo's financing at the time made it impractical to currently close the transaction and, in fact, that the sale might not close for "several years." In consideration of this fact, the parties agreed that Lombardo would reduce the purchase price to Beverage Holdings "by the amount of principal payments made by Seller to Seller's lender for the mortgage notes currently on the property" and that, at closing, Beverage Holdings would "receive a credit equal to the reduction in principal for the mortgage notes from the date of the execution of this agreement until the closing date." Given that the parties understood that Lombardo had issues with its financing prior to entering into the real estate purchase agreement, it would be absurd to conclude that Lombardo intended to deduct from the purchase price both principal payments and all rents received during what could be a lengthy lease term (the parties contemplated a lease term of as much as ten years). Doing so would seem only to undermine its already precarious financial situation.
 

 {¶ 21} The closing clause also indicates that the rent proration reduction was meant to apply only to rent paid after Beverage Holdings gave notice of intent to close. The parties anticipated a closing time between 120-180 days. Given this amount of time, it was prudent for the parties to state that any rents, which were payable in advance under the lease, be prorated to closing.
 

 {¶ 22} Admittedly, the real estate purchase agreement is not a model of clarity. But reasonable minds could find that Beverage Holdings is attempting to take advantage of errors in drafting that go beyond the hard consequences of imprecision
 and lapse into absurdity. I would find that questions of fact exist as to what the parties truly intended with the rent proration clause.